UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
UNITED STATES OF AMERICA            :
                                    :
            -v-                     :        20-mj-5235
                                    :
SOULEYMANE BALDE,                   :        OPINION AND ORDER
                                    :
            Defendant.              :
------------------------------------ x
JED S. RAKOFF, U.S.D.J.

        This is a most unusual case.

        Technically, it comes before the Court, sitting in Part I,
on an appeal from Magistrate Judge Stewart Aaron's denial of
bail to defendant Souleymane Balde following Balde's arrest last
Friday on a complaint charging him with illegal possession of a
firearm. Specifically, at Balde's presentment on May 22, Judge
Aaron ordered him detained as both a flight risk and a danger to
the community, and Balde then immediately appealed to the
undersigned, sitting in Part I. This Court held a lengthy
hearing early on Friday evening, but was unable to render an
immediate decision because it still needed to obtain and review
certain materials, such as the video taken by the police in
connection with an incident on which Judge Aaron relied in
denying bail. The Court therefore retained jurisdiction and,
having been able to obtain and review all necessary materials
over the three-day Memorial Day Weekend, now issues its opinion,
granting bail.

But this is not why the case is unusual. Rather, it comes laden with a background that is virtually unique. The events that give rise to the charge here occurred way back on December 14, 2015, when Balde got into an argument at a deli or bodega, pointed a gun at one of the individuals there, and, after retrieving his car, drove by the deli and fired a shot into the air. See 16-cr-130 (KPF), ECF No. 104, at 1-2; see also 16-cr-130 (KPF), ECF No. 1.

Although in the end the state declined to prosecute him, the federal government, having learned that Balde was an alien, indicted him in early 2016 for violating 18 U.S.C § 922(g)(5), which, inter alia, makes possession of a firearm by an illegal alien a federal felony. See 16-cr-130 (KPF), ECF No. 6. The case was assigned to my esteemed colleague, the Hon. Katherine Polk Failla, U.S.D.J., who, after substantial motion practice, permitted Balde to enter into a conditional guilty plea, preserving for appeal his contention that, while he was not a U.S. citizen, his presence in the United States was neither "unlawful" nor "illegal," as required under § 922(g)(5). See 16-cr-130 (KPF), ECF No. 55. On October 12, 2017, Judge Failla imposed a sentence on Balde of 23 months' imprisonment. See 16-cr-130 (KPF), ECF No. 67. In so doing, Judge Failla rejected the Government's argument that Balde's behavior at the deli was so

2

extreme as to warrant an above-guideline sentence; but she nevertheless sentenced Balde to almost the very top of the applicable guideline range. See Transcript 5/22/2020 (the Government statement at bail appeal hearing).

Following his original arrest, Balde had been denied bail, but after spending many months in jail, was granted release. See 16-cr-130 (KPF), Minute Entry 3/17/2016; 16-cr-130 (KPF), No. 26. After his guilty plea, Judge Failla, in light of the conditional nature of Balde's plea, allowed him to continue on bail. See 16-cr-130 (KPF), ECF No. 71. But on January 18, 2019, Judge Failla revoked Balde's bail in light of a knife-wielding incident described below. See 16-cr-130 (KPF), ECF Nos. 78, 79.

Eventually, the Second Circuit, after considerable delay, affirmed Balde's conviction, rejecting the claim he had preserved for appeal. See United States v. Balde, 927 F.3d 71 (2d Cir. 2019). But only days later, the Supreme Court, in Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019), held that in order to violate § 922(g), the accused must not only know that he was in possession of a firearm but also know that he was prohibited from such possession because of his illegal status. Since Balde had never been apprised of this element of the offense, Balde filed a timely petition for rehearing by the Second Circuit, which the Second Circuit granted on November 13,

2019. See United States v. Balde, 943 F.3d 73, 95-98 (2d Cir. 2019). Specifically, the Court of Appeals vacated Balde's guilty plea and remanded the case to Judge Failla, with the mandate issuing on January 8, 2020. See 16-cr-130 (KPF), ECF No. 104, at 5-6.

By that time, however, Balde, as a result of the time he had spent in jail both before and after his plea, had served the entirety of his term of imprisonment and had been turned over to the custody of the U.S Immigration and Customs Enforcement ("ICE") for deportation. See 16-cr-130 (KPF), ECF Nos. 92, 94. In other words, but for the happenstance of the Supreme Court's decision in Rehaif, double jeopardy would have attached and Balde could not have been prosecuted a second time for the events of December 14, 2015.

Instead, on remand, Balde was returned to federal custody, and, on April 6, 2020, Judge Failla ruled that he should be denied bail while the case was still before her. See 16-cr-130 (KPF), ECF No. 104. On May 21, 2020, however, Judge Failla ruled from the bench that, in light of Rehaif, the indictment itself was deficient and must be dismissed, albeit "without prejudice" See 16-cr-130 (KPF), Transcript 5/21/2020, at 20. However, she stayed "execution of [her] decision for the earlier of 24 hours or the filing of a government complaint," noting that, if a new

4

complaint was filed, it would no longer be automatically assigned to her but would have to be randomly assigned. Id.; see also 16-cr-130 (KPF), ECF No. 110. The Government, doubtlessly delighted at this chance to get a "second bite at the apple," filed its complaint that same day and arrested Balde the day after, thus precipitating the proceeding now before this Court. See ECF No. 1.[1]

---

[1]   This new complaint is identical to the previous complaint, except that the new complaint, in light of Rehaif, includes an additional allegation that Balde "knew that he had no [lawful] status" in December 2015. See ECF No. 1, ¶ 6f.

The defense argued in front of Magistrate Judge Aaron and argues here that the complaint should be dismissed because there was no probable cause for the newly added allegation that Balde knew that he "had no lawful immigration status." See 18 U.S.C. § 922(g)(5). In support of this argument, the defense points to ICE's Order of Supervision, dated December 27, 2007, which, in releasing Balde from ICE custody, led Balde to allegedly believe that he was "permitted" to remain in the United States.

However, just as Magistrate Judge Aaron did, the Court finds this argument unpersuasive, as paragraph 6 of the complaint alleges facts that inferentially tend to establish probable cause with respect to the mens rea element at issue. See United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) (holding that the facts and circumstances from which probable cause may be inferred need not reach "the level of evidence necessary to support a conviction"); Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007) ("[It is] well established . . . that a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn by the facts alleged."). Furthermore, the defense fails to mention that the Order of Supervision - which the defense argues was "exculpatory" evidence withheld from Magistrate Judge Nathaniel Fox, who signed the arrest warrant at

It is hard for this Court to see the Government's latest action as anything less than problematic. Balde has already served his original sentence in its entirely. It is only because of the somewhat bizarre series of events described above that double jeopardy has not attached. The Government justifies its seemingly vindictive determination to nonetheless effectively re-prosecute him on the same charge that was dismissed after he won on appeal by saying that they always believed Balde merited a sentence of more than 23 months, and now they have at least a theoretical chance to realize that result. See Transcript 5/22/2020; see also 16-cr-130 (KPF), ECF No. 67.[2]

But in light of the COVID-19 shutdown and its effects on

---

issue - was preceded by another document entitled "Release Notification Under the Intensive Supervision Appearance Program (ISAP)," which explicitly instructed Balde that "This release does not affect your removal order, nor does it constitute an admission to the United States."

In any event, because Balde has the right to a preliminary hearing later where he can challenge probable cause, or he may file a motion to dismiss a new indictment, it is premature for the Court to dismiss the complaint at this juncture.

[2]    In fairness to the Government, Judge Failla, in her opinion denying bail for Balde while the matter was still before her, went so far as to suggest that the possibility of an enhanced sentence might be warranted if Balde went to trial, was found guilty, and now had to be sentenced not only on the basis of what she previously determined, but new incidents of alleged, and uncharged, misconduct (discussed below). See 16-cr-130 (KPF), ECF No. 104, at 11.

jury trials, it is doubtful that Balde can be brought to trial before October 2020, and more likely much later. From the standpoint of determining bail, therefore, this Court has to consider the possibility that, if bail is denied, Balde, having already served his full 23 months on a charge that has now been vacated, will have to serve at least another six months, or likely more, before any jury gets to determine whether he is actually guilty or not of what is essentially the same charge simply dressed up to accord with Rehaif. Or, to put it bluntly, the Government, having failed to get an above-guideline sentence on a charge that has now been vacated, will, if bail is denied, obtain by default an above-guideline sentence on an essentially similar charge regardless of whether Balde is ultimately found guilty or innocent. This, surely, is Kafka-esque.

## Analysis

Under the Bail Reform Act, the Court must order a pretrial defendant detained upon finding that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Government carries the burden in seeking pretrial detention by a preponderance of the evidence. See United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007). In making a bail determination,

7

the Court is required to consider the following factors: (1) the "nature and circumstances of the offense charged"; (2) "the weight of the evidence against defendant"; (3) "the history and characteristics of defendant"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by defendant's release." See 18 U.S.C. § 3142(g).

    As to the risk of flight, the Government points to two ways in which Balde allegedly poses such a risk. First, the Government argues that, if Balde is released from BOP custody, he will automatically be returned to ICE custody, whereupon he may well be removed from the United States, as ICE is under no obligation to keep Balde in the United States pending criminal prosecution. See United States v. Lett, 944 F.3d 467, 472-73 (2d Cir. 2019). However, if that were to happen, his failure to appear in future court proceedings is not a result of his own volition, but simply an unresolved dispute between two agencies of the Executive. Balde should not be penalized for ICE's hypothesized refusal to comply with the Government's request to postpone his removal. See United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015) ("[T]he risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition.").

8

Second, the Government argues that, to the extent bail would result in his release from both BOP and ICE custodies, Balde has every incentive to flee because Balde now knows that ICE has recently obtained a valid travel document to successfully deport him, which ICE could not do for many years because of lack of a valid travel document. However, it is abundantly clear that Balde has no incentive to flee: not only has he lived for many years in the United States with his wife and children, but also he has already retained two immigration lawyers to seek a stay of removal from ICE pending application for lawful status through his U.S. citizen spouse. For these reasons, the Court finds that Balde does not pose a flight risk warranting detention.

As to the danger to the community, the Government focuses on the following three incidents: the bodega incident in 2015 that forms the basis of the instant complaint; a knife-wielding incident in 2018; and his resistance this past January to ICE officers' attempt to put him on a plane for deportation.

As to the bodega incident, no one was injured and no state charges were ultimately pursued. Indeed, Judge Failla, after initially denying bail to Balde after the original indictment was brought, subsequently granted bail and repeatedly loosened his bail conditions in light of his scrupulous compliance until

9

November 2018. See 16-cr-130 (KPF), ECF No. 44, ECF Nos. 46, 50, 52, 54, 73.

As to the knife-wielding incident, in November 2018, Balde, while intoxicated at his home, got into an argument with his brother-in-law, where he allegedly cut his brother-in-law with a knife. See 16-cr-130 (KPF), ECF Nos. 78, 79. His wife may also have been cut. See id. This Court, however, upon careful review of the photographs and the body camera footage taken by the police officers responding to the incident, finds that the wounds were superficial and that the entire incident amounted to a drunk brawl with his brother-in-law, in which no one was in serious danger. This, one may infer, was also the view of the arresting authorities, for the state misdemeanor charges arising out of this incident were dropped shortly thereafter, and no sworn complaints were ever signed by victims or witnesses.

As to the incident with ICE officers, in January of this year, ICE attempted to deport Balde by placing him on a commercial flight, but Balde, determined not to leave the United States and his family, resisted verbally and by mildly struggling with the accompanying ICE officers. See Transcript 5/22/2020. This was not a type of behavior that would give rise to a concern about the safety of the community under the meaning of 18 U.S.C. § 3142, if Balde were released; and, in fact, no

10

charges were ever brought against Balde in connection with this incident.

The Court thus concludes that the Government has not carried its burden of showing that there is no set of conditions that will prevent Balde from fleeing or presenting a genuine danger to the community or any other person. Accordingly, it is hereby ordered that the defendant is released subject to the following conditions:

1. Prior to his release, defendant must sign a personal recognizance bond in the amount of $75,000, to be co-signed by two financially responsible persons.

2. Defendant is subject to strict Pretrial Services supervision.

3. Defendant is subject to home confinement, to be enforced by such location monitoring technology as determined by Pretrial Services. Of course, upon his release from jail, Balde will doubtlessly be detained by ICE. But if then he is released from ICE detention, defendant must report to Pretrial Services immediately for the installment of location monitoring equipment. For court appearances, he must communicate his plan of travel with Pretrial Services in advance so that he may be closely monitored. If defendant is required to access necessary medical services, he must communicate with his attorney in

advance, who will then seek approval through Pretrial Services.
All additional requests for leave will not be permitted.

4. If Pretrial Services so requires, defendant must install
the home monitoring unit under the direction and instruction of
Pretrial Services.

5. Defendant's travel is restricted to the Southern and
Eastern Districts of New York.

6. Defendant must surrender all travel documents, and make
no new applications.

7. Defendant must refrain from possession of a firearm,
destructive device or other dangerous weapon.

8. Defendant must refrain from consuming any alcoholic
beverages.

SO ORDERED.

Dated:     New York, NY
           May 26, 2020

_____

JED S. RAKOFF, U.S.D.J.

12